## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

DANIEL SAQUIL-OROZCO,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. C 13-4085-MWB
(No. CR 12-4016-MWB)

**MEMORANDUM OPINION AND ORDER REGARDING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE**

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**................................................................2
    A.    *Criminal Proceedings* ................................................ 2
    B.    *Section 2255 Proceedings* ........................................ 9

II.    **LEGAL ANALYSIS** ................................................... 11
    A.    *General Standards For § 2255 Relief* ........................... 11
        1.    *Grounds for § 2255 relief* ................................ 11
        2.    *Standards for an evidentiary hearing* ................... 13
    B.    *Saquil-Orozco's Claims Of Ineffective Assistance of Counsel* ........................................................... 15
        1.    *"Ineffective assistance of counsel" standards* ..................... 15
        2.    *Improper stipulation to an upward variance* ......................... 16
            a.    *Arguments of the parties* ..................................... 17
            b.    *Analysis* ................................................. 18
        3.    *Failure to challenge possession of the firearm* ..................... 21
            a.    *Arguments of the parties* ..................................... 21
            b.    *Analysis* ................................................. 22
    C.    *The Brady Claim*................................................. 23
        1.    *Arguments of the parties*................................ 23
        2.    *Analysis* ................................................. 24
    D.    *Certificate Of Appealability*.................................... 26

III.    **CONCLUSION** ...................................................... 27

This case is before me on petitioner Daniel Saquil-Orozco's Motion For Vacation Of Sentence Pursuant To 28 U.S.C. § 2255 (§ 2255 Motion) (Civ. docket no. 1), which Saquil-Orozco filed *pro se*. Saquil-Orozco seeks relief from concurrent sentences of 100 months of imprisonment on a charge of possession of a firearm by a felon and illegal alien and a charge of illegal reentry, pursuant to a Rule 11(c)(1)(C) plea agreement, which included a stipulation to an upward variance from the advisory sentencing guidelines range of 63 to 78 months of imprisonment. Saquil-Orozco asserts two claims of ineffective assistance of his trial counsel and a *Brady* violation by the prosecution as grounds for § 2255 relief. The respondent denies that Saquil-Orozco is entitled to any relief on his claims.

## I.     *INTRODUCTION*
### A.     *Criminal Proceedings*

On February 2, 2012, Saquil-Orozco was indicted as the sole defendant in a two-count Indictment. **Count 1** of the Indictment charged that, on or about December 18, 2011, Saquil-Orozco was a felon and illegal alien in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (5) and 924(a)(2). **Count 2** of the Indictment charged that, on December 18, 2011, Saquil-Orozco was found illegally in the United States after removal to Guatemala subsequent to a conviction for a drug felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Counsel was appointed to represent Saquil-Orozco, and Saquil-Orozco entered pleas of not guilty to both charges on March 2, 2012.

Prior to trial, which was eventually set to begin on July 9, 2012, the court scheduled a change-of-plea hearing for July 3, 2012. *See* Order (Crim. docket no. 45). Saquil-Orozco's trial attorney had negotiated a Rule 11(c)(1)(C) plea agreement,

including a stipulation to an upward variance from Saquil-Orozco's anticipated advisory sentencing guidelines range of 63 to 78 months of imprisonment to a range of 100 to 120 months of imprisonment. Trial counsel avers—and Saquil-Orozco does not dispute—that, prior to or in the course of negotiations of a plea agreement, trial counsel had questioned another defense attorney and had performed his own research concerning the likelihood that I would vary upward in a case involving domestic violence, use of firearms, and drug trafficking, and that he had concluded that such a variance was likely in Saquil-Orozco's case. *See* Respondent's Resistance, Trial Counsel's Affidavit (Civ. docket no. 17-1), 2-3. Saquil-Orozco refused to sign the negotiated plea agreement, however, so his case was returned to the active trial docket for trial on July 9, 2012. *See* Order (Crim. docket no. 50).

Saquil-Orozco's jury trial began as scheduled on July 9, 2012, and continued on July 10, 2012. *See* Trial Minutes (Crim. docket nos. 62 and 64). On July 10, 2012, both the prosecution and the defense rested, without the defense calling any witnesses or presenting any evidence. *See* Trial Minutes (Day 2) (Crim. docket no. 64). Rather, at the conclusion of the evidence, the defense moved for a mistrial on the ground that the prosecution had failed to disclose that an investigating officer would recant, in his trial testimony, a part of his police report of the incident giving rise to the charges against Saquil-Orozco. Specifically, the officer recanted the portion of his police report stating that the suspect was bald (but Saquil-Orozco was not), which the prosecution had apparently known for approximately two weeks prior to trial. *See id.*; Trial Transcript (Crim. docket no. 85), 323:12-19. The officer had explained, in his trial testimony, that the incorrect reference to the suspect being bald in his report was likely the result of either his misstatement or a faulty transcription of his recorded oral dictation. *See* Trial Transcript at 300:8-307:23. Trial counsel argued in support of his motion for a mistrial that the failure to disclose this information could have had an impact on Saquil-Orozco's

decision not to accept the proposed plea agreement and, instead, go to trial. *See id.* at 323:15-325:13. Trial counsel argued that "the proper remedy is to put the defendant back in the same position that he was before he rejected the [plea] agreement and, you know, see if he still wants to accept the proposal that was on the table or even some other proposal." *Id.* at 325:10-13. The prosecution also suggested that less drastic remedies than a mistrial might be appropriate. *Id.* at 326:5-7.

At that point in the proceedings, I commented as follows:

> THE COURT: Well, let me—let's explore this a little bit. Without ruling on the motion for mistrial—and I'm not saying anybody did anything wrong. I'm not at that point, or I may never be at that point. But the easiest resolution is—I mean, this trial, with all due respect to both sides, is really a slow guilty plea. I use that phrase jokingly in chambers with regard to some trials, but, you know, let's face it. Government has a very strong case. You had a thin re[e]d to rely on, you know, with the bald description, and the witness effectively kind of undermined your ability to argue that effectively in my limited judgment here.

> Would the government—so without, you know, ruling on a mistrial, would the government—I'm just looking at a simple solution, but it may be too simple. Would the government be willing to put the defendant in the same position as he was last Thursday maybe or Friday when a plea was set up?

Trial Transcript at 326:8-23. After a recess of approximately half an hour, during which the parties discussed the matter, the parties notified me that they planned to enter into a Rule 11(c)(1)(C) plea agreement, and the proceedings morphed into a plea-taking hearing. Trial Minutes (Day 2). Saquil-Orozco signed essentially the same plea agreement that he had previously been offered, and I accepted his guilty plea to both charges in the Indictment. Plea Hearing Minutes (Crim. docket no. 65), 2.

4

Two portions of the plea agreement that Saquil-Orozco signed are of particular interest here. First, Saquil-Orozco struck out the following subparagraphs of the Stipulation Of Facts in the plea agreement:

> J.    Defendant used the firearm in connection with another felony offense when he pointed the firearm at others, threatened others with the firearm, and repeatedly discharged the firearm.
>
> K.    Defendant has physically abused his former paramour E.C.
>
> L.    After returning to Sioux City, Iowa, defendant possessed, possessed with the intent to sell, sold, and otherwise trafficked and [sic] unknown amount of marijuana from his Sioux City, Iowa home.

Plea Agreement (Crim. docket no. 63), ¶ 10(J)-(L). Notwithstanding that Saquil-Orozco had struck out the quoted subparagraphs of the Stipulation Of Facts, he did agree to the following portion of the plea agreement concerning Sentencing Provisions:

> 12.    Pursuant to Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure, the Court shall be bound by the terms of this plea agreement, including the sentencing range as determined by the parties (i.e., 100 - 120 months' imprisonment). If the Court does not agree to be bound, neither party shall be bound by, or held to perform, the obligations imposed by this agreement, and the agreement shall be rendered null and void. In reaching this agreement the parties anticipated defendant would be placed in Criminal History Category III and have a total offense level (after application of USSG §§2K2.1 (a)(4)(a) and (b)(6)(B) (in connection with) and a two-level reduction pursuant to USSG §3E1.1 (acceptance or responsibility)) of 24, resulting in an advisory guideline range of 63-78 months' imprisonment. *The United States believes, and defendant does not contest, that the upward departure and/or variance up to the range of 100-*

> *120 months' imprisonment captures defendant's use of the*
> *firearm, his physical abuse of his former paramour E. C., and*
> *his marijuana trafficking activities.*

Plea Agreement, ¶ 12 (emphasis added).

By Order (Crim. docket no. 71), filed August 29, 2012, I set Saquil-Orozco's sentencing hearing for October 4, 2012, but I later reset his sentencing hearing for November 14, 2012. *See* Order (Crim. docket no. 80). On September 7, 2012, the Clerk of Court received and filed correspondence from Saquil-Orozco that I construed as a *pro se* Motion For New Attorney And To Withdraw Guilty Plea (Crim. docket no. 72). By Order (Crim. docket no. 75), filed after a hearing on September 7, 2012, a magistrate judge of this court denied Saquil-Orozco's Motion For New Attorney. The magistrate judge found that the supposed discrepancy between the calculation of Saquil-Orozco's advisory sentencing guidelines range as 63 to 78 months, in a draft presentence investigation report (PSIR), and his stipulation to a sentencing range of 100 to 120 months, in the plea agreement, did not indicate that his trial counsel had misjudged the case. Order at 4-5. Rather, the magistrate judge found that Saquil-Orozco had been adequately advised of the reason for and the stipulation to an upward variance and that the calculation of the advisory sentencing guidelines range in the draft PSIR was "not unexpected and certainly d[id] not indicate any error or failure on [trial counsel's] part." *Id*. at 5. On October 9, 2012, after discussions with trial counsel, Saquil-Orozco filed, through his trial counsel, a Motion To Withdraw *Pro Se* Motion (Crim. docket no. 81), seeking to withdraw his motion to withdraw his guilty plea. I granted that motion by Order (Crim. docket no. 82), filed on October 9, 2012.

Notwithstanding that Saquil-Orozco had agreed not to try to withdraw his guilty plea, Saquil-Orozco's trial counsel avers—and Saquil-Orozco does not dispute—that, in late September of 2012, Saquil-Orozco informed trial counsel that he wanted to breach the plea agreement as to the stipulated sentencing range and, instead, seek a sentence

within the advisory sentencing guidelines range. *See* Respondent's Response, Affidavit Of Trial Counsel (Civ. docket no. 17-1), 4. Trial counsel avers—and Saquil-Orozco does not dispute—that trial counsel sent Saquil-Orozco a letter dated September 27, 2012, explaining the risks of withdrawing from the portion of the plea agreement stipulating to the sentencing range. *See id.*, Affidavit Of Trial Counsel (Civ. docket no. 17-1), Exhibit B. Trial counsel avers—and Saquil-Orozco does not dispute—that trial counsel again advised Saquil-Orozco not to breach the plea agreement during a face-to-face meeting on October 4, 2012, and yet again during a telephonic conference on November 8, 2012, but Saquil-Orozco insisted on doing so. *See id.*, Affidavit Of Trial Counsel at 4.

Consequently, trial counsel filed objections to certain factual statements and references to the stipulation to the sentencing range in drafts of the PSIR. Somewhat more specifically, the Second Amended And Final Presentence Investigation Report (2nd Amended PSIR) (Crim. docket no. 90) indicates that Saquil-Orozco objected to statements, in the Offense Conduct section and the Offense Level Computation section, that Saquil-Orozco beat or intended to physically hurt his paramour, E.C., or that he possessed or fired a firearm at any time. *See* 2nd Amended PSIR, ¶¶ 6, 8-9, 17. Also, on November 8, 2012, trial counsel filed a Sentencing Memorandum (Crim. docket no. 93), arguing for a sentence within the advisory sentencing guidelines range. The prosecution filed a Sentencing Memorandum And Memorandum In Support Of It's [sic] Motion For Upward Departure (Crim. docket no. 89) on November 7, 2012.

Trial counsel avers, I recall, and Saquil-Orozco does not dispute, that the following occurred prior to Saquil-Orozco's sentencing hearing:

> On November 14, 2012, [trial] counsel appeared before the court for sentencing. During a conference in chambers, the court informed counsel for both parties that if the defendant persisted in abrogating the 11(c)(1)(C) agreement, the court's usual procedure would be to continue the hearing and refer

the case to Chief Judge Reade for reassignment. The court also indicated that if the defendant elected to proceed with sentencing under the agreement, the court would be inclined to sentence the defendant to the bottom of the agreed-upon range.

Affidavit Of Trial Counsel at 4. Trial counsel avers—and Saquil-Orozco does not dispute—that after this conversation in chambers, the following occurred:

[Trial] [c]ounsel then met with the defendant and briefly explained the court's position, including the potential consequences of reassignment to a different judge for sentencing. I also explained the likelihood that the court would sentence the defendant to 100 months if we proceeded with sentencing that day. Mr. Saquil wanted to know if I could guarantee that the court would sentence him to 100 months, and I told him no, I could not give him a guarantee, but I was reasonably confident that the court would do so based on the court's statements in chambers. The defendant then elected to proceed with sentencing pursuant to the 11(c)(1)(C) plea agreement and I so informed the court.

Affidavit Of Trial Counsel at 5.

The Sentencing Hearing Minutes (Crim. docket no. 97), the Sentencing Hearing Transcript (Crim. docket no. 105), and the Judgment (Crim. docket no. 98) reflect that I did, indeed, accept the parties' Rule 11(c)(1)(C) plea agreement and sentenced Saquil-Orozco to 100 months of imprisonment on **Counts 1** and **2**, to run concurrently. I explained that, while a sentence of 100 months was "significantly higher than the actual guideline range in the case," I agreed that it was a reasonable sentence in light of the 18 U.S.C. § 3553(a) aggravating and mitigating factors in the case. Sentencing Hearing Transcript at 4:14-5:1. Although I offered the parties the opportunity to do so, neither party requested a further explanation of my application of the § 3553(a) factors. *Id*. at 5:2-10.

On November 28, 2012, pursuant to Saquil-Orozco's request, trial counsel filed a Notice Of Appeal (Crim. docket no. 101). Saquil-Orozco asserts—and the respondent does not dispute—that trial counsel filed an *Anders* brief on appeal, so Saquil-Orozco filed a *pro se* supplemental brief asserting the following grounds: (1) trial counsel was ineffective; (2) the court erred in denying his motion for new counsel; (3) his guilty plea was coerced; (4) his sentence was enhanced based on false statements or evidence; (5) the court erred in sentencing him above the guidelines range; (6) the charges against him are false; and (7) the convictions were or are prejudicing his pending immigration proceedings. The Eighth Circuit Court of Appeals denied relief. *See* Opinion (Crim. docket no. 115), *published at United States v. Saquil-Orozco*, 508 F. App'x 584 (8th Cir. 2013).

### B.     *Section 2255 Proceedings*

Saquil-Orozco filed his Motion For Vacation Of Sentence Pursuant To 28 U.S.C. § 2255 (§ 2255 Motion) (Civ. docket no. 1), *pro se*, on September 4, 2013. In a supporting *pro se* Memorandum Of Law, Saquil-Orozco identified three grounds for § 2255 relief: (1) violation of his rights to due process and a fair trial when the prosecution failed to disclose exculpatory information and documents prior to trial; (2) ineffective assistance of trial counsel at sentencing by failing to object to an upward departure or variance from the advisory sentencing guidelines range; and (3) ineffective assistance of trial counsel and violation of due process during pretrial proceedings, when trial counsel failed to file a motion to suppress the § 922(g)(1) charge for insufficient evidence of constructive possession of a firearm. By Order (Civ. docket no. 2), filed November 4, 2013, I directed the respondent to file an answer or other appropriate response.

The Respondent filed an Answer (Civ. docket no. 3), consisting of a general denial of Saquil-Orozco's factual allegations, on November 21, 2013. By Order (Civ. docket no. 4), filed November 22, 2013, I directed the Clerk of Court to appoint counsel (§ 2255 counsel) to represent Saquil-Orozco in these proceedings and set deadlines for Saquil-Orozco to file a brief, with the aid of § 2255 counsel, a deadline for the respondent's response brief, and a deadline for Saquil-Orozco's reply, if any. I also directed trial counsel to cooperate with the respondent by providing information, documents, and an affidavit, if necessary.

On February 24, 2014, Saquil-Orozco filed, with the aid of § 2255 counsel, his Brief In Support Of His § 2255 Motion (Civ. docket no. 12). In that Brief, § 2255 counsel described Saquil-Orozco's claims as the following: (1) his trial counsel was ineffective in stipulating to an upward variance above the advisory sentencing guidelines range; (2) his rights to due process and a fair trial were violated when the prosecution failed to disclose exculpatory information; and (3) his trial counsel provided ineffective assistance by failing to file a motion to suppress the § 922(g)(1) count on the basis of insufficient evidence of constructive possession of the firearm. Section 2255 counsel briefed only the first claim, but stated that he had nothing to add to Saquil-Orozco's original *pro se* arguments as to the second and third claims. On May 23, 2014, the respondent filed its Response And Memorandum In Support Of Government's Response To Defendant's Motion Under 28 U.S.C. § 2255 (Respondent's Response) (Civ. docket no. 17), to which the respondent attached an Affidavit Of Trial Counsel (Civ. docket no. 17-1), which, in turn, included two exhibits: Exhibit A, which was a copy of an e-mail exchange between trial counsel and the prosecutor dated July 2, 2012, and Exhibit B, which was trial counsel's September 27, 2012, letter to Saquil-Orozco. The respondent also attached, as Exhibit 1 (Civ. docket no. 17-2), a copy of Saquil-Orozco's plea

agreement.  On June 30, 2014, Saquil-Orozco filed his Reply Brief (Civ. docket no. 20), again with the aid of § 2255 counsel.

Regrettably, there the matter has languished until now, owing to the press of other work and clerical oversight.

## II.    LEGAL ANALYSIS

### A.    General Standards For § 2255 Relief

#### 1.    Grounds for § 2255 relief

"Section 2255 [of Title 28 of the United States Code] 'was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)).  Nevertheless, "[l]ike habeas corpus, this remedy 'does not encompass all claimed errors in conviction and sentencing.'" *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Specifically, § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  Thus, § 2255 "provides a remedy for jurisdictional and constitutional errors," but "[b]eyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; 'an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental

defect which inherently results in a complete miscarriage of justice.""" *Sun Bear*, 688 F.3d at 704 (quoting *Addonizio*, 442 U.S. at 185, in turn quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord Walking Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) ("'Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.'" (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

In addition, where an issue *was* raised, considered, and rejected on the merits on direct appeal, "it may not be raised in a motion for post-conviction relief under 28 U.S.C. § 2255 or § 2241." *United States v. Rhodes*, 730 F.3d 727, 731 (8th Cir. 2013). Also, where a claim *was not* raised on direct appeal, it generally may not be raised in a § 2255 motion. *Walking Eagle*, 742 F.3d at 1082. A petitioner may overcome "procedural default" from failure to raise a claim on direct appeal, however, if the petitioner establishes both "'cause for the procedural default and actual prejudice resulting from the error.'" *Id.* (quoting *Apfel*, 97 F.3d at 1076, in turn citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). "'Absent unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and prejudice.'" *Id.* (quoting *Apfel*, 97 F.3d at 1076)).

Indeed, "ineffective assistance of counsel" claims are not procedurally defaulted when brought for the first time pursuant to § 2255. *Massaro v. United States*, 538 U.S. 500, 508 (2003). The Eighth Circuit Court of Appeals has also expressly recognized that a claim of "ineffective assistance of counsel" should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, Saquil-

Orozco's claims of ineffective assistance of his trial counsel are properly and timely presented in § 2255 proceedings.

Not only does ineffective assistance of counsel establish "cause and prejudice" to overcome procedural default, in my experience, such claims are far and away the most common claims for § 2255 relief. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel not only at trial, but at sentencing, on direct appeal, and during other "critical" phases of the criminal proceedings. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) (negotiation of a plea bargain); *Burger v. Kemp*, 483 U.S. 776, 803–04 (1987) (pretrial plea negotiations); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (direct appeal); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (sentencing). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). I will consider the standards applicable to ineffective assistance of counsel claims in more detail when I turn to consideration of Saquil-Orozco's specific ineffective assistance of counsel claims.

## 2. *Standards for an evidentiary hearing*

One further procedural matter that is often of considerable importance in § 2255 proceedings is the standard for an evidentiary hearing. That standard is plainly of central concern here, where Saquil-Orozco's § 2255 counsel requests an evidentiary hearing, at the very least, on Saquil-Orozco's claim that trial counsel was ineffective in stipulating to an upward variance above the advisory sentencing guidelines range. As the Eighth Circuit Court of Appeals recently explained,

> "Evidentiary hearings on 28 U.S.C. § 2255 motions are
> preferred, and the general rule is that a hearing is necessary
> prior to the motion's disposition if a factual dispute exists."
> [*Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir.
> 2013)]. "The district court is not permitted to make a
> credibility determination on the affidavits alone." *Id*. at 1206.

*United States v. Sellner*, 773 F.3d 927, 929 (8th Cir. 2014). Indeed, "'[w]here petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record 'affirmatively refutes the factual assertions upon which [the claim] is based.''" *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (citing *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007), in turn quoting *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994)). On the other hand,

> [The district court] may . . . deny an evidentiary hearing if
> "(1) the [petitioner's] allegations, accepted as true, would not
> entitle the [petitioner] to relief, or (2) the allegations cannot
> be accepted as true because they are contradicted by the
> record, inherently incredible, or conclusions rather than
> statements of fact." [*Thomas*, 737 F.3d] at 1206–07
> (alterations in original) (quoting *Buster v. United States*, 447
> F.3d 1130, 1132 (8th Cir.2006)).

*Sellner*, 773 F.3d at 929-930; *accord Anderson v. United States*, 762 F.3d 787, 792 (8th Cir. 2014) (citing 28 U.S.C. § 2255(b)); *Franco*, 762 F.3d at 763; *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013).

The district court's denial of an evidentiary hearing is reviewed for abuse of discretion. *Sellner*, 773 F.3d at 929; *see also United States v. Fausto*, 754 F.3d 640, 642 (8th Cir. 2014) (explaining that, to determine whether the district court abused its discretion in denying an evidentiary hearing, the court must review de novo the validity of a petitioner's § 2255 claims).

### B.     Saquil-Orozco's Claims Of Ineffective
### Assistance of Counsel

As explained above, two of Saquil-Orozco's claims for § 2255 relief are claims of ineffective assistance of counsel.  Before considering these claims separately, I will summarize the requirements for proof of an ineffective assistance of counsel claim.

### 1.     *"Ineffective assistance of counsel" standards*

As the Eighth Circuit Court of Appeals has explained,

> "Normally, in order to succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir.2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*Sweeney v. United States*, 766 F.3d 857, 859-60 (8th Cir. 2014).  "Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" *Hyles v. United States*, 754 F.3d 530, 533 (8th Cir. 2014) (quoting *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013)).  These two prongs require some further explication.

"Deficient" performance is performance that falls "'below an objective standard of reasonableness,'" *Lafler v. Cooper*, ___ U.S. ___, ___, 132 U.S. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)), that is, conduct that failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014).  Thus, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687)).

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ___, 131 S. Ct., at 791.

*Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, ___ U.S. at ___, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687). As the Eighth Circuit Court of Appeals has explained, however,

> [P]rejudice may be presumed when the defendant experiences a "complete denial of counsel" at a critical stage of his trial. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). "[T]he trial is the paradigmatic critical stage." *United States v. Turner*, 975 F.2d 490, 496 (8th Cir.1992).

*Sweeney*, 766 F.3d at 859-60.

I now turn to consideration of Saquil-Orozco's claims for § 2255 relief based on ineffective assistance of trial counsel.

### 2. *Improper stipulation to an upward variance*

Saquil-Orozco's first claim for § 2255 relief, and the only one extensively briefed by his § 2255 counsel, is his claim that his trial counsel was ineffective in stipulating to an upward variance above the advisory sentencing guidelines range. The respondent denies that Saquil-Orozco is entitled to any relief on this claim.

16

## a.    *Arguments of the parties*

Saquil-Orozco explains that the gist of his argument on this claim is that trial counsel did not fully discuss the proposed plea agreement with him, and that trial counsel's advice to accept the plea offer fell below prevailing professional norms, because various sentencing factors made a sentence within the advisory sentencing guidelines range appropriate.  Saquil-Orozco points out that, in his sentencing brief, trial counsel did identify several reasons for a sentence within the advisory sentencing guidelines range.  He points out that those arguments included that the bases for the upward variance had already been accounted for in enhancements pursuant to the guidelines, including enhancements for a prior drug conviction, which increased the base offense level on the firearm count and dramatically increased his base offense level on the illegal reentry count.  He also argues that the evidentiary bases for the upward variance were suspect, where the evidence at trial cast doubt on the allegations of abuse of his paramour and his use of the firearm, suggested collusion between the paramour and another witness to make their stories consistent, and showed that there was no physical evidence that he fired the firearm.  He also argues that the evidence of his marijuana dealing was "slight." He contends that, where he objected to the parts of the plea agreement and the 2nd Amended PSIR concerning alleged domestic abuse, use of the firearm, and drug dealing, the prosecution should have been required to, but could not have, proved each such basis for any upward variance.  He also argues that there was substantial evidence of his assimilation into American culture and that his criminal history did not warrant an upward variance.

In response, the respondent argues that trial counsel not only fully discussed the plea agreement, including the stipulation to an upward variance, with Saquil-Orozco, but adequately investigated the likelihood of an upward variance by the court in the circumstances of a defendant who had engaged in domestic abuse, used a firearm, and

dealt drugs after illegally reentering the United States. The respondent points to portions of trial counsel's affidavit, to which Saquil-Orozco did not subsequently object, detailing trial counsel's efforts to advise Saquil-Orozco about and adequately research the basis for a stipulation to an upward variance in the circumstances of his case. The respondent also points to trial counsel's view that, despite exposure of some weaknesses in the prosecution's case, the trial was not going well, and to his tactical decision to seek a mistrial to afford Saquil-Orozco another opportunity to take the plea offer, in light of the investigating officer's recantation of the identification of the suspect as "bald" in his dictated report. Indeed, the respondent points out that I considered the prosecution's case to be "strong" and that the trial was essentially a "slow guilty plea." As to *Strickland* prejudice, the respondent argues that an "open" sentencing would likely have led to an even higher sentence, particularly if Saquil-Orozco had ultimately breached the plea agreement, and lost reductions for acceptance of responsibility and possibly incurred an enhancement for obstruction of justice. The respondent also points out that, if Saquil-Orozco breached the plea agreement, the respondent would then have been free to pursue additional drug and firearm charges against Saquil-Orozco pursuant to an ongoing investigation.

In his Reply, Saquil-Orozco reiterates that he objected to the factual bases for the upward variance in the plea agreement and the 2nd Amended PSIR, so that it is not a foregone conclusion that the prosecution would have been able to establish the alleged bases for the upward variance.

### b. Analysis

There is no question "that *Strickland* applies to ineffective assistance claims arising out of the plea bargaining process." *See, e.g., Wanatee v. Ault*, 259 F.3d 700, 703 (8th Cir. 2001) (citing *Hill*, 474 U.S. at 58). Moreover, trial counsel certainly has an obligation to advise a defendant about the benefits and risks of taking a plea agreement

18

or going to trial and about the likely sentencing range if the defendant goes to trial and is convicted or pleads guilty with or without a plea agreement. *See, e.g., United States v. Hernandez*, 450 F. Supp. 2d 950, 959 (N.D. Iowa 2006). Here, however, Saquil-Orozco's first claim is contradicted by the record, so that no evidentiary hearing is required. *Sellner*, 773 F.3d at 929-930.

The record, here, shows that trial counsel fulfilled his duty to communicate with Saquil-Orozco about the reasons for a stipulation to an upward variance. Trial counsel's efforts to inform Saquil-Orozco about options for and the comparative risks of going to trial or accepting a plea agreement were objectively reasonable. *See Lafler*, ___ U.S. at ___, 132 U.S. at 1384 (the petitioner must show that trial counsel's performance fell "'below an objective standard of reasonableness'" (quoting *Hill*, 474 U.S. at 57)). Saquil-Orozco has not attempted to rebut trial counsel's affidavit on this point with any statement under oath, so there is no basis to find that trial counsel failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney in this respect. *Strickland*, 466 U.S. at 687; *Donnell*, 765 F.3d at 821.

Furthermore, trial counsel's advice that Saquil-Orozco stipulate to the upward variance was not objectively unreasonable. The Eighth Circuit Court of Appeals has explained, "*Strickland* teaches that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). On the other hand, "'[S]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel.'" *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013)(quoting *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991). The uncontradicted record here, including trial counsel's affidavit, shows that trial counsel adequately investigated not only the factual basis for the upward variance, but the likelihood that I would vary upward

in a case involving domestic abuse, use of a firearm, and drug dealing by an alien after illegal reentry. Saquil-Orozco contends, nevertheless, that his rejection of the part of the plea agreement stating that he physically abused his paramour, used the firearm, and dealt drugs, as well as his similar objections to pertinent portions of the 2nd Amended PSIR, deprived the prosecution (and the court) of the necessary factual basis for an upward variance. I find that Saquil-Orozco overlooks the fact that the evidence presented at his *trial*, before his belated decision to take the plea agreement, adequately supported an upward variance on the grounds stated in the plea agreement.

Therefore, Saquil-Orozco has failed to establish the "deficient performance" prong of this ineffective assistance of counsel claim, and this claim is denied on this basis alone. *See Hyles*, 754 F.3d at 533 ("Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" quoting *Morelos*, 709 F.3d at 1250)).

In addition, or in the alternative, Saquil-Orozco cannot establish the "prejudice" prong of this ineffective assistance of counsel claim. *See Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384; *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1403. Saquil-Orozco has not pointed to any evidence demonstrating a reasonable probability that, if he had not taken the plea agreement at the eleventh hour, he would not have been convicted. Indeed, it was clear to me that the trial was essentially "a slow guilty plea." Trial Transcript at 326:8-23. Also, in light of evidence at trial that Saquil-Orozco illegally reentered the United States and thereafter engaged in domestic abuse, used a firearm, and dealt drugs, it was all but inevitable that I would vary upward, and would most likely have varied upward further than the parties had stipulated. Saquil-Orozco also has not shown that there was any plea agreement that the prosecution actually or would have offered without an upward variance or only a smaller upward variance. *See Kingsberry v. United States*, 202 F.3d 1030, 1031 (8th Cir. 2000) (the petitioner must prove that a plea agreement was formally offered by the prosecution). Indeed, the record of trial counsel's efforts to

negotiate a plea agreement, starting with an upward sentencing limit of 78 months, demonstrates the contrary.[1]

This claim is denied.

### 3.   *Failure to challenge possession of the firearm*

Saquil-Orozco's second claim of ineffective assistance of counsel is that trial counsel failed to file a motion to suppress the § 922(g)(1) count on the basis of insufficient evidence of constructive possession of the firearm.   The respondent also denies that Saquil-Orozco is entitled to relief on this claim.

### a.   *Arguments of the parties*

Section 2255 counsel explains that he recognizes that motions to suppress are not a valid way to attack the sufficiency of evidence upon which an indictment is based. Thus, § 2255 counsel suggests that this claim is more appropriately framed as a claim that trial counsel was ineffective in advising Saquil-Orozco to plead guilty to a charge for which the prosecution had insufficient evidence.   Section 2255 counsel explains, however, that he has nothing further to state as to this claim.   In his original *pro se* brief, Saquil-Orozco argues that there is no evidence that he ever actually or constructively possessed the charged firearm, where the police never saw him holding it, his fingerprints were not found on it, there is no other physical evidence that he ever fired it, and it was

---

[1] If anything, I believe that Saquil-Orozco's trial counsel performed well above reasonable expectations in putting together a coherent argument to limit the upward variance to the bottom of the stipulated range or, as the argument was originally formulated, to limit the sentence to a term within the advisory sentencing guidelines range.   To put it another way, I believe that trial counsel did an exceptional job of "trying to make a silk purse out of a sow's ear."   At the risk of piling too many idioms together, I would also label this entire claim of ineffective assistance of counsel, challenging the plea agreement and the stipulation in it, a bad case of "buyer's remorse," where I believe that Saquil-Orozco got no more than he deserved and, perhaps, better than he deserved, but now thinks, in rosy hindsight, that he should have had a more lenient sentence.

found on the property of another. He contends that the testimony of cooperating witnesses is too inconsistent to establish constructive possession.

The respondent points out that there is no evidence that Saquil-Orozco ever asked trial counsel to challenge the evidentiary basis for the firearm possession charge, either by filing a motion to dismiss the charge or in any other way. The respondent also points out that both trial counsel and the court thought that the evidence was such that the trial was going badly for Saquil-Orozco, so that there was no factual basis to challenge the possession element of the firearm charge.

### b. Analysis

I conclude that the record demonstrates beyond dispute that Saquil-Orozco cannot establish either "deficient performance" or "prejudice" in support of this ineffective assistance claim, *see Sweeney*, 766 F.3d at 859-60 (explaining that an ineffective assistance claim requires proof of both "deficient performance" and "prejudice"), and that he is not entitled to an evidentiary hearing, because the undisputed record contradicts his claim. *Sellner*, 773 F.3d at 929-930. The record demonstrates that trial counsel was well aware of the issue of Saquil-Orozco's alleged possession of the firearm; reasonably concluded that the best way to challenge the evidence was by cross-examination at trial rather than in any pre-trial motion; and adequately prepared for and effectively executed the cross-examination of cooperating witnesses and others to impeach the prosecution's evidence of firearm possession. *See Rodela-Aguilar*, 596 F.3d at 464 (explaining that strategic choices made by counsel after adequate investigation are virtually unchallengeable). Moreover, despite trial counsel's zealous efforts, I still found that the prosecution's case was "strong" and the trial was essentially "a slow guilty plea." Trial Transcript at 326:8-23. Thus, there is no reasonable probability that, had trial counsel pursued a different method of challenging the sufficiency of the evidence of Saquil-Orozco's possession of the firearm, the result would have been different. *See Lafler*, ___

U.S. at ___, 132 S. Ct. at 1384 (explaining the standards for proof of "prejudice"); *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1403 (same).

This claim is denied.

## C.    The **Brady** *Claim*

Saquil-Orozco's remaining claim for § 2255 relief is that his rights to due process and a fair trial were violated when the prosecution failed to disclose exculpatory information.  This claim is premised on the recantation by an investigating officer, in his trial testimony, of the part of his police report in which he identified the suspect as "bald," which Saquil-Orozco was not.  Saquil-Orozco contends, and the respondent does not dispute, that the prosecution knew of this departure from the police report in the investigating officer's trial testimony at least two weeks before trial, but did not notify the defense of the anticipated change.  As originally formulated, at least, this claim is, in essence, a claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  The respondent contends that Saquil-Orozco is not entitled to relief on this claim.

### 1.    *Arguments of the parties*

Section 2255 counsel explains that this claim might more properly be categorized as a claim that trial counsel was ineffective in advising Saquil-Orozco to plead guilty instead of arguing that a new trial would have been appropriate in light of the *Brady* violation.  Section 2255 counsel adds, however, that he has nothing further to state as to this claim.  In his original *pro se* brief, Saquil-Orozco argued that, because the evidence in question was not timely disclosed, he was deprived of information that might have supported a challenge to the search warrant and that might have had an impact on his decision about whether or not to proceed to trial or take a plea agreement.

The respondent argues that this claim, considered as a *Brady* claim, is procedurally defaulted, because it was not raised on direct appeal.  The respondent also argues that

Saquil-Orozco cannot show "cause and prejudice" to excuse that default or either "deficient performance" or "prejudice" to support this claim recast as an ineffective assistance of counsel claim. The respondent points out that, in his affidavit, trial counsel avers that he did not believe that the failure to disclose the change in the police officer's testimony from his police report amounted to a *Brady* violation and that the appropriate course was to address the discrepancy in cross-examination, which trial counsel did. The respondent also argues that Saquil-Orozco cannot prove any required "prejudice," because he was given the opportunity to reconsider whether or not to accept the plea agreement in light of the change in the police officer's testimony.

> ### 2. *Analysis*

First, a claim of a *Brady* violation requires a petitioner to show "that the government suppressed evidence, either willfully or inadvertently; that the evidence was favorable to h[im], either because it was exculpatory or impeaching; and that it was material to the outcome at trial." *Masten v. United States*, 752 F.3d 1142, 1146 (8th Cir. 2014) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999), and *United States v. Walrath*, 324 F.3d 966, 969 (8th Cir. 2003)). Here, however, Saquil-Orozco's claim of a *Brady* violation is procedurally defaulted, because it was not raised on direct appeal. *Walking Eagle*, 742 F.3d at 1082. Although Saquil-Orozco can establish "cause" to attempt to overcome that procedural default, because trial counsel did not raise the issue on appeal, he cannot establish the required "prejudice" to excuse the default. *See id*. Nor can he establish either "deficient performance" or "prejudice" to prove a related ineffective assistance of counsel claim. *See Sweeney*, 766 F.3d at 859-60.

Saquil-Orozco has not shown how trial counsel's performance was deficient with regard to the alleged *Brady* violation, and any claim that it was is contradicted by the record, so that no evidentiary hearing is required. *Sellner*, 773 F.3d at 929-930. When trial counsel learned of the discrepancy between the police officer's report and his trial

testimony about whether or not the suspect was "bald," trial counsel *both* engaged in adequate efforts to impeach the prosecution's case on the basis of the discrepancy and moved for a mistrial. Saquil-Orozco has pointed to nothing to demonstrate that trial counsel performed unreasonably by concluding that the best course to address the discrepancy was cross-examination, in the first instance, then to request that Saquil-Orozco be given the opportunity to reconsider the plea agreement in light of the changed testimony, as a remedy for the alleged *Brady* violation. Thus, treated as an ineffective assistance of counsel claim, this claim fails for lack of proof of "deficient performance." *See Hyles*, 754 F.3d at 533 ("Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" quoting *Morelos*, 709 F.3d at 1250)).

Saquil-Orozco also cannot establish "prejudice," either to show "cause and prejudice" to resurrect a defaulted *Brady* claim or to sustain a related ineffective assistance of counsel claim. Saquil-Orozco offers nothing but conclusory allegations that the misidentification of the suspect as "bald" in the police report somehow tainted the subsequent search warrant and all—let alone any—of the evidence offered at trial. *Sellner*, 773 F.3d at 929-930 (explaining that conclusory allegations are not enough to require an evidentiary hearing). Moreover, the possible "prejudice" to Saquil-Orozco's ability to evaluate whether to go to trial or to accept a plea agreement, in light of non-disclosure of this discrepancy, was fully cured when the prosecution agreed to reoffer and Saquil-Orozco accepted the pretrial plea offer. Thus, Saquil-Orozco has not shown that there is any reasonable probability that, but for counsel's failure to raise the alleged *Brady* violation, the outcome of his case would have been different. *See Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (explaining the standards for proof of "prejudice" for purposes of a claim of ineffective assistance of counsel); *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1403 (same); *see also Walking Eagle*, 742 F.3d at 1082 (explaining that, to establish the

"prejudice" element of "cause and prejudice" to resurrect a defaulted claim, the petitioner must prove "actual prejudice").

This claim is denied.

### D.  Certificate Of Appealability

Denial of all of Saquil-Orozco's claims for § 2255 relief raises the question of whether or not he is entitled to a certificate of appealability on those claims.  In order to obtain a certificate of appealability on those claims, Saquil-Orozco must make a substantial showing of the denial of a constitutional right.  *See Miller–El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings."  *Cox*, 133 F.3d at 569.  Moreover, the United States Supreme Court reiterated in *Miller–El v. Cockrell* that, "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  I conclude that Saquil-Orozco has failed to make a substantial showing that any of his claims are debatable among reasonable jurists, that a court could resolve any of the issues raised in those claims differently, or that any question raised in those claims deserves further proceedings.  Consequently, a certificate of appealability is denied as to all of Saquil-Orozco's claims.  *See* 28 U.S.C. § 2253(c)(1)(B); *Miller-El*, 537 U.S. at 335-36; *Cox*, 133 F.3d at 569.

### III.    CONCLUSION

Upon the foregoing,

1.      Petitioner Saquil-Orozco September 4, 2013, Motion For Vacation Of Sentence Pursuant To 28 U.S.C. § 2255 (§ 2255 Motion) (Civ. docket no. 1) is **denied in its entirety**;

2.      This matter is **dismissed in its entirety**; and

3.      No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.

**DATED** this 17th day of June, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA